IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **WEST COAST TRENDS, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 6:10-CV-688 |
| | § | |
| **OGIO INTERNATIONAL, INC., et al.,** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Ogio International, Inc.'s ("Ogio") Motion to Transfer Venue to the District of Utah (Doc. No. 30)("MOTION"). West Coast Trends, Inc ("West Coast") filed a response (Doc. No. 34)("RESPONSE") to which Ogio replied (Doc. No. 39)("REPLY"). After considering the parties' arguments, the Court **GRANTS** Ogio's motion.

**BACKGROUND**

On December 27, 2010, West Coast Trends filed this action alleging that Ogio, Dynamic Brands, LLC ("Dynamic"), and Sun Mountain Sports, Inc. ("Sun Mountain") infringed U.S. Patent No. 7,219,902 (the "'902 patent") and/or U.S. Design Pat. No. D511,043 (the "'043 Design Patent"). *See* AMENDED COMPLAINT (Doc. No. 6) at ¶ 1. In its answer, Ogio filed false marking counterclaims against West Coast Trends alleging that its "Last Bag" product was intentionally and deceptively marked with U.S. Patent No. D511,043. *See* OGIO'S ANSWER TO AMENDED COMPLAINT ("ANSWER")(Doc. No. 16) at ¶¶ 38-44). Dynamic and Sun Mountain were subsequently dismissed on April 27, 2011 and June 6, 2011 respectively. (Doc. Nos. 12 & 18). Ogio filed this

motion on August 19, 2011.

West Coast Trends is a California Corporation with its principal place of business in Huntington Beach California,. AMENDED COMPLAINT (Doc. No. 6) at ¶ 1. The '902 patent, the only patent asserted against Ogio, names Jeffrey C. Herold, the founder of West Coast Trends, as the sole inventor. *Id.* at ¶ 12; '902 patent.

Ogio is a Utah corporation with its principal place of business in Bluffdale, Utah. AMENDED COMPLAINT at ¶ 2. The two accused products, the Ogio Mammoth bag and the Ogio Monster bag, were designed and developed at Ogio's business in Utah and all employees involved in the design of these products are based in Utah. DECLARATION OF MICHAEL PRATT ("PRATT DECL.")(Doc. No. 30-2) at ¶ 4. Similarly, the marketing and sales decisions regarding the accused products were made in Utah and the employees responsible for those marketing and sales decision are located in Utah. *Id* at ¶ 6.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To

show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In this case, West Coast Trends does not contest that Ogio conducts business within the District of Utah and transfer is permissible under § 1404. *See* RESPONSE at 4. As to the convenience factors, the Court finds that most public and private interest factors are either neutral or weigh in favor of transfer and Ogio has met its burden of establishing that the District of Utah is "clearly more convenient."

**I.      The Private Interest Factors**

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *Genentech*, 566 F.3d at 1345. As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)).

The alleged infringing products were "solely designed and developed in Utah" and the employees responsible for that development are based in Utah. PRATT DECL. at ¶4. Moreover, all employees "who are and were involved in the marketing, sales, and pricing decisions regarding the [alleged infringing products] are based in Utah." *Id.* at ¶ 6. As a result, Ogio's relevant documents are likely located in Utah which weighs in favor of transfer. *See id.*

West Coast fails to identify any relevant evidence in Texas. Instead, West Coast argues that Ogio does not identify any documents with the requisite specificity to demonstrate that transfer will result in more convenient access to sources of proof. RESPONSE at 10 (quotations omitted). This Court has consistently held that "[a] movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties." *See, e.g., J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2009 WL 440525 at *2 (E.D.Tex. Feb.20, 2009); *see also Invitrogen v. Gen. Elec. Co.*, No. 6:08–CV–113, 2009 WL 331889 at *3, (E.D.Tex. Feb.9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources

of proof either more or less convenient for the parties"). Although Ogio does not identify specific, individual documents or categories of documents, Ogio provides unrebutted testimony that "documents describing the research, design, and development of Ogio's products . . . are located in the District of Utah." MOTION at 8; *see also* PRATT DECL. at ¶¶ 4-7. Moreover, it is likely these documents are located at Ogio's headquarters in Bluffdale, Utah. *See id.* While Ogio's identification is not ideal, West Coast provides no reason to doubt Ogio's assertion that all of its documents are located in the District of Utah. Additionally, West Coast has not identified any documents located in or near the Eastern District of Texas. Presumably all of its documents relevant to its infringement claim and its false marking defense are located at its headquarters in Huntington Beach, California which is substantially closer to the District of Utah.

In sum, Ogio's unrebutted testimony that its relevant documents are located in the District of Utah combined with West Coast's failure to identify any documents located in or near the Eastern District of Texas persuades the Court that transfer to the District of Utah would be more convenient with regards to the accessibility of relevant sources of proof.

*(b) The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

This factor weighs heavily for transfer if the majority of non-party witnesses are located within the District of Utah. *See Volkswagen II*, 545 F.3d at 316; *see also In re Zimmer*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (stating that the venue where potentially relevant witnesses are located weighs in favor of that venue). The only third party witnesses identified by the parties are those persons involved in the prosecution of the '902 patent and the '043 design patent. Three of which reside in California and one, Mary Jo Bertaini, resides in the Austin, Texas area. *See* REPLY at 4; RESPONSE at 8. Because none of these parties are located within the transferee venue and Ms.

Bertaini resides outside of the Eastern District, the Court finds this factor neutral.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

All of the identified witnesses except for one prosecuting attorney reside in California. The witnesses traveling from California would have to travel over 1,300 miles to reach the Eastern District of Texas compared to only approximately 600 miles to the District of Utah. *See* MOTION at 10-11. However, Ms. Bertaini would have to travel significantly farther to reach the District of Utah. Ogio argues that "[t]he potential Ogio witness are located in Utah," but fails to identify specific witnesses other than to state that "[a]ll Ogio employees that are or were involved in the development, design, marketing, sales and pricing of the accused products are located in Utah." MOTION at 4 (citing PRATT DECL. at ¶ 7). The failure to identify specific witnesses discounts the weight Ogio's assertions. *See Novelpoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010)(stating that the Court will not base its conclusion on unidentified witnesses). However, given that all but one of the identified witnesses reside in California, the Court finds this factor weighs in favor of transfer.

*(d) Other Practical Problems*

West Coast Trends argues that Ogio's motion should be denied because it was not filed promptly. RESPONSE at 6-7. While there is no set time limit for bringing a motion to transfer venue under section 1404(a), the Fifth Circuit has held that "[p]arties seeking a change of venue should act with reasonable promptness." *Peteet v. Dow Chemical Co.,* 868 F.2d 1428, 1436 (5th Cir. 1989). Thus, if the party opposing transfer can show that transfer would result in prejudice solely due to the delay in bringing the motion or that the motion is a dilatory tactic, then the movant has failed to show "reasonable promptness." *Mohamed v. Mazda Motor Corp.,* 90 F. Supp. 2d 757, 760 (E.D. Tex. 2000)(citing *Peeteet*, 868 F.2d at 1436). However, a significant delay in filing a section 1404(a) motion is rarely, if ever, dispositive but weighs against transferring the case. *See Konami Digital Entertainment Co., Ltd. v. Harmonix Music Systems, Inc.*, No. 6:0cv286, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23, 2009)("Should [the] case be transferred, both parties would suffer the delay and prejudice of losing both the *Markman* and trial dates set"); *IBEW-NECA Southwestern Health & Benefit Fund v. Duvall Electric, LLC*, No. 3:10cv1079B, 2011 WL 711005, at *4(N.D. Tex Feb. 28, 2011)(weighing against transfer where transfer would eliminate key dates in the Scheduling Order and result in duplication of efforts by the court and the parties).

West Coast argues that Ogio failed to act with "reasonable promptness" because it waited nearly nine months to file the motion including two months where Ogio has been the sole defendant. RESPONSE at 6. Ogio counters that the parties were involved in active settlement discussions that disintegrated in mid July, and it promptly filed the motion when the talks fell apart. REPLY at 2.

Just as in *Konami*, the Court finds that granting Plaintiff's motion at this stage would prejudice the parties by eliminating the benefit of an earlier *Markman* hearing and trial date. However, while it is true that the Motion was filed nine months after the case was filed, the delay

is mitigated by the fact that the parties were in active settlement negotiations until two months before Ogio filed the Motion. Nevertheless, because West Coast in particular will suffer prejudice by losing the benefit of the early *Markman* hearing and trial date, the Court finds this factor weighs against transfer.[1]

## II. The Public Interest Factors

*(a) The Administrative Difficulties Flowing From Court Congestion*

This factor is the most speculative, and cannot alone outweigh other factors. *Genentech*, 566 F.3d at 1347. However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis. *Id.* Ogio argues that the District of Utah is "less congested" than the Eastern District of Texas because this district handles a higher volume of intellectual property cases. *See* MOTION at 5,14. West Coast counters that despite this congestion, the median time to trial across all civil cases disposed of during the 12-month period ending on March 31, 2010 was 25.8 months in the Eastern District of Texas compared to 30.6 months in the District of Utah. RESPONSE at 3. As is common with this factor, the parties cite to incongruous statistics which prevents the Court from drawing a a meaningful conclusion as to court congestion. The highly speculative nature of this factor is enhanced by the parties' failure to cite statistics regarding the disposition of *patent* cases. Thus, this factor is neutral.

*(b) The Local Interest in Having Localized Interests Decided at Home*

As an initial matter, it is well settled that the sale of accused products nationwide does not

---

[1] Plaintiff's argument that Ogio's false marking counterclaim is an admission by Ogio that the Eastern District of Texas is a convenient forum falls flat. As noted above, it appears that all of the relevant documents and third party witnesses related to the counterclaim are located in California. The Court will not penalize Defendants for electing to bring a permissive counterclaim and vigorously defending the case. Lastly, the Federal Circuit rejected a similar argument in *Genentech,* 566 F.2d at 1346 (rejecting the notion that defendant's previous pursuit of litigation in the Eastern District of Texas equated to an admission of convenience for the purposes of deciding a 1404(a) motion).

implicate the interests of the Eastern District of Texas any more than the local interests of any other district. *See Volkswagen II*, 545 F.3d at 318. Moreover, with respect to the accused products in Ogio's counterclaim, Utah has no greater interest in the reputation of the California based West Coast Trends than the Eastern District of Texas. Defendants, however, have shown that the District of Utah has a local interest in this case because the development of Ogio's accused products and the decisions regarding the sale and marketing of those products occurred within that district. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"). Because West Coast has identified no connection to Texas except for one patent prosecution attorney who lives "in the vicinity of Austin, Texas," this factor weighs in favor of transfer.

*(c) The Remaining Public Interest Factors*

The remaining public interest factors are neutral. Both courts are familiar with federal patent law and there are no conflicts to avoid.

## CONCLUSION

For the aforementioned reasons, the Court finds that the District of Utah is a clearly more convenient forum. The cost of attendance of willing witnesses, the location of the sources of proof, and the District of Utah's local interest in the case weigh heavily in favor of transfer. The presence of one prosecuting attorney in Texas and the prejudice caused by Ogio's delay in filing the Motion do not outweigh the fact that most of the evidence is located in Utah, most of the witnesses are located in Utah, and those witnesses and documents that are not in Utah are located in California. Thus, the Court **GRANTS** Ogio's motion to transfer venue to the District of Utah.

**So ORDERED and SIGNED this 27th day of October, 2011.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE